26-mj-7100-JCB

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas McCarthy, being sworn, state:

**Introduction and Agent Background**

1.      I am a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and have been so employed since July 2025. I have successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco Georgia and the HSI Special Agent Training program. In 2018, I graduated from Seton Hill University with a B.A. degree in Business Finance. In 2022, I received a Master's degree in Business Administration specializing in Forensic Accounting. My current duties as an HSI Special Agent include conducting investigations involving the fraudulent acquisition, production, and misuse of U.S. immigration documents, U.S. passports, and identity documents. Due to my training, experience, and conversations with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

2.      I am currently assigned to the HSI New England Document and Benefit Fraud Task Force ("DBFTF"), a specialized field investigative group comprised of personnel from various state, local, and federal agencies with expertise in detecting, deterring, and disrupting organizations and individuals involved in various types of document, identity, financial, and benefit fraud schemes. As part of this task force, I am responsible for conducting investigations involving, but not limited to, the manufacturing, counterfeiting, alteration, sale, and use of identity documents and other fraudulent documents to evade law enforcement or for other criminal activity. Due to my training and experience, as well as conversations with other law enforcement officers,

I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

3.    I have participated in various aspects of investigations into the use and manufacture of fraudulent documents, including conducting physical surveillance, surveillance of controlled purchases involving undercover agents and/or cooperating witnesses, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and the debriefing of defendants, informants, and witnesses.

4.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the mobile phone assigned 857-397-8163 (the "Target Mobile Phone"), the subscriber to which is H.B., the alias used by the defendant in this case, Manual Antonio BAEZ ("BAEZ" or "Defendant"), and that is believed to be used by BAEZ.

5.    A Complaint charging BAEZ with False Representation of a Social Security Number, MassHealth Fraud, and Aggravated Identity Theft was issued by this Court on March 10, 2026. *See* 26-mj-7044-JCB. A copy of the Affidavit in Support of that Complaint is attached hereto and incorporated herein as Exhibit ("Ex.") 1.[1]

6.    The Complaint describes, among other things, the paperwork that BAEZ submitted in connection with the charged offenses. In the DOC forms described in Paragraph 13 of Exhibit 1, the Target Phone Number is listed as that of H.B., demonstrating that BAEZ had access to, or used, the Target Phone Number in connection with at least one of the Target Offenses. Further

---

[1]    The Court has sealed the Affidavit.

confirming his use of the Target Phone Number, on January 26, 2026, I placed a cold call to this number and asked the individual who answered, "Is this H.B?" and the person responded, "Yes, I'm H."

7.    The service provider for the Target Mobile Phone is T-Mobile US, Inc., ("T-Mobile" or "Provider") a wireless telephone service provider that accepts service of process at 4 Sylvan Way, Parsippany, NJ 07054. The Target Mobile Phone is further described in Attachment A, and the location information to be seized is further described in Attachment B.

8.    Based on the facts set forth in this affidavit, there is probable cause to believe that BAEZ has violated 42 U.S.C. § 408(a)(7)(B) (False Representation of a Social Security Number), 18 U.S. C. § 1035 (Making False Statements Relating to a Health Care Program), and 18 U.S.C. § 1028A (Aggravated Identity Theft) (collectively, the "Target Offenses"). The location information described in Attachment B will assist law enforcement in arresting BAEZ, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

9.    Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

10.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**Probable Cause**

11.     As more fully detailed in Exhibit 1, there is probable cause to believe that BAEZ has stolen the identity of a U.S. citizen named H.N.B. There is further probable cause to believe that BAEZ has used that identity to fraudulently obtain MassHealth benefits. *See* Ex. 1, ¶¶ 6–23.

12.     On March 10, 2026, the Court issued search warrants for: (i) the residence where law enforcement had believed Defendant to reside, *see* 26-mj-7045-JCB; and (ii) Defendant's person, *see* 26-mj-7046-JCB. The court also issued an arrest warrant for Defendant. *See* 26-mj-7044-JCB.

13.     On March 11, 2026, law enforcement agents executed the search warrant for Defendant's suspected residence, but did not encounter Defendant. An individual who indicated he was the nephew of the Defendant confirmed that the Defendant had been living there and had his own bedroom, but that Defendant was in the process of moving back in with his wife at another Dorchester, Massachusetts residence. The nephew declined to provide the address of Defendant's wife's residence.

14.     The precise location information requested by the proposed warrant will enable investigating agents to determine the Target Mobile Phone's location for the purposes of locating the Defendant, executing the search warrant of his person (26-mj-7046-JCB), and the arrest warrant (*see* 26-mj-7044-JCB).

**Background on Cell-Site Data and Location Information**

15.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including: (1) E-911

Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records."

16.    E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

17.    Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

18.    Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Mobile Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. This information can be extremely useful when attempting to locate a suspect or identify his or her past historical location.

19.    I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. Analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject

is communicating with through the cellular service provider's records can assist law enforcement in identifying the other party to the call. Running those telephone numbers through normal investigative steps and searches through open-source public databases can lead to the identification of specific locations such as a hotel, residence, or other type of physical address. When used in conjunction with cell-site and other precision location information, it can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also part of the service provider's call detail records (ordinary business records) associated with historical cell-site information and provides a more complete understanding and more accurate view of a subject's historical and perspective location.

20.     Based on my training and experience, I know that cellular providers such as the T-Mobile can also collect Timing Advance data, which is also referred to as Per Call Measurement Data ("PCMD"), the "real-time tool" ("RTT"), and True Call data. Timing Advance data estimates the approximate distance of the cellular device from a cellular tower based upon the time it takes for signals to travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

21.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), an International Mobile Equipment Identity ("IMEI"), a Subscription Permanent Identifier ("SUPI"), and/or a Network Access Identifier ("NAI").

22.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Mobile Phone's user(s).

23.     Obtaining cell site information that reflects the movement of cellular telephones being used by a subject can provide information beneficial to law enforcement conducting an investigation. More broadly, based upon my training and experience, tracking the location of a subject frequently leads to evidence, including, but not limited to the identification of potential criminal associates, such as criminal co-conspirators, and the identification of physical locations at which unlawful conduct took place. Such information often corroborates and verifies information and investigative leads derived from other investigative techniques, including informants and live and recorded surveillance. Here, the requested historical cell site data and prospective cell site location information could help identify BAEZ's current location to assist in effecting his arrest. Information about the individuals with whom BAEZ is in contact may also assist agents in locating BAEZ.

**Authorization Request**

24.    I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.[2]

25.    The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachments A-1 and A-2 for each communication to or from the TARGET PHONE NUMBERs, without geographic limit, for a period of sixty (60) days pursuant to 18 U.S.C. § 3123(c)(1).

26.    I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Mobile Phone on T-Mobile's network, and at such intervals and times as directed by the government. The government will compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

27.    I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order T-Mobile not to notify any person (including the subscribers or customers to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's

---

[2]    18 U.S.C. 2703(c) authorizes a "court of competent jurisdiction" to issue a search warrant for the kinds of records that this application seeks. A "court of competent jurisdiction" includes a district court ("including a magistrate judge") that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b) T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice. Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving Defendant an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, or change patterns of behavior. *See* 18 U.S.C. § 2705(b). Moreover, some of the evidence in this investigation is stored electronically. If alerted to the existence of the Order, the targets could destroy that evidence, including information saved to their personal computers, on other electronic media, or in social media accounts.

28.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay any required notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Mobile Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29.    Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, good cause exists under Rule 41 to permit the execution of the requested warrant at any time in the day or night. Further, pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Mobile Phone outside of daytime hours.

30.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court, except that the government provide the search warrant to T-Mobile. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_Thomas McCarthy by JCB_

Thomas McCarthy , Special Agent,
United States Department of Homeland
Security, Homeland Security Investigations

SWORN before me telephonically pursuant to Fed. R. Crim. P. 4.1 this __12__ day of March 2026.



HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

10

**ATTACHMENT A**

**Property to be Searched**

1.      This warrant applies to records and information associated with the cellular device assigned call number 857-397-8163 ("Target Mobile Phone"), whose service provider is T-Mobile ("Provider"), a wireless communications service provider that is located at 4 Sylvan Way Parsippany, NJ 07054.

2.      Information about the location of the Target Mobile Phone that is within the possession, custody, or control of Provider, including information about the location of the cellular telephone if it is subsequently assigned a different number.

26-mj-7100-JCB

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be Disclosed by the Provider**

**A. Historical Information from March 1, 2026 to Present**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the account(s) associated with the TARGET MOBILE PHONE listed in Attachment A for the time period of March 1, 2026, to the present:

a. The following information about the customer(s) or subscriber(s) associated with account(s) related to the Target Mobile Phone:

   i.   Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv.  Records of session times and durations, the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, and the destination IP addresses visited or otherwise accessed by the Target Mobile Phone;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), Subscription Permanent Identifier ("SUPI"), or Network Access Identifier ("NAI");

    vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

    viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and,

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Mobile Phone, including:

    i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

    ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received (including data sessions); and,

    iii.   all available Timing Advance data or precision location information such as True Call, NELOS, and RTT reports, to include 1X, EVDO, LTE, IP session, 5G, and Data.

### B.  Prospective Information

Additionally, the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A: All information about the location of the Target Mobile Phone for a period of thirty days, during all times of day and night. "Information about the location" includes all available E-911 Phase II data, GPS data, latitude longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Section A. Additionally, it includes all records containing round-trip-distance measurements and/or timing advance information for each connection made to or from the Accounts (CDMA, EVDO, UMTS, LTE, etc.), to include LocDBoR, RTT, True Call Measurement Data, Per Call Measurement Data, and Reveal Reports. This warrant does not authorize the collection of any content of any communications.

It also includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by T-Mobile. The pen register/trap and trace device shall be transferable to any change dialed number (MSISDN) subsequently assigned to a device bearing the same ESN, IMSI, SUPI, or SIM as the Target Mobile Phone listed in Attachment A; any changed ESN, IMSI, SUPI, or SUM subsequently assigned the same dialed number as the Target Mobile Phone; or any additional changed dialed number, ESN, IMSI, SUPI, or SIM listed to the same subscriber account as the Target Mobile Phone.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Mobile Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This search warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

### C. Information to Be Seized by the Government

All information described above in Section I.A and I.B that will assist in arresting Defendant, who was charged with violating 42 U.S.C. § 408(a)(7)(B) (False Representation of a

Social Security Number), 18 U.S. C. § 1035 (Making False Statements Relating to a Health Care Program), and 18 U.S.C. § 1028A (Aggravated Identity Theft) on March 10, 2026, is the subject of an arrest warrant issued on March 10, 2026, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

T-Mobile shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b). *See* 18 U.S.C. § 2705(b). T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice.

26-mj-7100-JCB

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Information about the location of the phone assigned 857-397-8163 | M.J./Court No. [Court No.]<br><br>UNDER SEAL |

**MOTION TO SEAL**

The United States asks the Court to seal the search warrant application, supporting affidavit, search warrant, this motion, and all related orders and paperwork until further order of this Court.

The United States further moves pursuant to General Order 06-05 that the United States Attorney, through undersigned counsel, be provided copies of all sealed documents which the United States Attorney has filed in this matter.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: _____
Colin T. Missett
Assistant U.S. Attorney

Dated: March 12, 2026